DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| BARBARA MAGRAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| GOVERNOR JOHN P. DE JONGH, JR., ) | Civil Action No. 2010-091 |
| LIEUTENANT GOVERNOR GREGORY ) | |
| FRANCIS, in their official and individual ) | |
| capacities, EXECUTIVE SECURITY UNIT ) | |
| and THE GOVERNMENT OF THE UNITED ) | |
| STATES VIRGIN ISLANDS, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Rachel E. Morrison, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Melvin H. Evans, Jr., Esq.,**
St. Croix, U.S.V.I.
    *For the Defendants*

<u>**MEMORANDUM OPINION**</u>

**Lewis, District Judge**

    THIS MATTER is before the Court on Defendants' Motion for Judgment on the Pleadings (Dkt. No. 34), Plaintiff's Opposition to the Motion (Dkt. No. 36), and Defendants' Reply. (Dkt. No. 42). For the reasons discussed below, the Court will grant in part and deny in part Defendants' Motion, and will grant Plaintiff's request for leave to amend the Complaint.

I. **BACKGROUND**

A. **Procedural History**

This case stems from the March 24, 2009 removal of Plaintiff Barbara Magras from her position as a Dignitary Security Officer with the Executive Security Unit ("ESU") of the Virgin Islands Police Department.

On September 7, 2010, Plaintiff filed a Complaint (Dkt. No. 1) seeking declaratory relief, compensatory damages, and punitive damages from Governor John P. de Jongh, Jr. and Lieutenant Governor Gregory Francis (in both their individual and official capacities), ESU, and the Government of the United States Virgin Islands (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et. seq.*), and Virgin Islands law. Specifically, Plaintiff contends that Defendants: (1) violated her rights under the Fourteenth Amendment by removing her from ESU without due process (Count I); (2) violated her rights under the Equal Protection Clause (Count I); (3) breached the terms of her employment contract and the implied covenant of good faith and fair dealing (Counts II & IV); (4) impermissibly discriminated against her on the basis of gender (Count III); and (5) intentionally inflicted emotional distress upon her (Count V). (Dkt. No. 1 at ¶¶ 42-66).

Defendants filed an Answer (Dkt. No. 13), and a discovery schedule was established. (Dkt. No. 14). The Court granted multiple requests from the parties to extend these deadlines (*see* Dkt. Nos. 20; 25; 29), before ultimately setting May 18, 2012 as the close of discovery and the deadline for filing dispositive motions. (Dkt. No. 30).

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants filed the instant Motion for Judgment on the Pleadings (Dkt. No. 34) and Supporting Memorandum (Dkt. No. 34-1) on May 18, 2012, contending that the Complaint fails to state a claim upon which relief can be

2

granted. Plaintiff filed her Opposition to the Motion (Dkt. No. 36), and Defendants filed a Reply. (Dkt. No. 42).[1] The matter is ripe for consideration.

**B.      Factual Background**

In view of the applicable legal standard, *see infra*, Part II, the following facts alleged in the Complaint are accepted as true for purposes of Defendants' Motion.[2]

In January of 2007, Plaintiff was employed as a Conservation Enforcement Officer with the Department of Planning and Natural Resources, earning an annual salary of $29,344. (Dkt. No. 1 at ¶ 9). By notification of personal action dated January 22, 2007, Plaintiff was given a "change of class and position," thereby becoming a Dignitary Security Officer ("DSO") with ESU. (*Id.*). ESU is an instrumentality of the Executive Branch of the Government of the Virgin Islands, and is under the jurisdiction, control, and direction of the Commissioner of the Virgin

---

[1] Defendants' original Motion is not signed by counsel for Defendants, although the certificate of service is signed. (Dkt. No. 34). Plaintiff did not initially identify or object to this procedural error; rather, she filed her Opposition to the Motion. (Dkt. No. 36). Two months later, Defendants filed a second Motion for Judgment on the Pleadings (Dkt. No. 41) correcting the signature error, together with a Reply (Dkt. No. 42) to Plaintiff's Opposition—apparently unaware that Local Rule 12.1(a)(2) sets a fourteen-day deadline for filing replies. (*See* Dkt. No. 42 at 1) (asserting that "[t]he Court did not specify a reply deadline" even though LCRi 12.1(a)(2) provides that "[a]ny reply from the movant shall be filed within fourteen (14) days of the filing of an opposition from an adverse party"). Thereafter, Plaintiff filed Motions (Dkt. Nos. 45; 46) seeking to strike Defendants' signed Motion and the Reply from the record as untimely. Defendants responded with two motions (Dkt. Nos. 47; 48) requesting that the Court deny Plaintiff's Motions to Strike.

The Court will deny Plaintiff's Motions to Strike and instead address the merits of Defendants' Motion for Judgment on the Pleadings. No prejudice has resulted from the initial omission of the signature, and counsel for Defendant represented that he attempted to remedy the omission by filing the signed Motion as soon as he realized his own error. (*See* Dkt. No. 47). Consideration of Defendants' untimely Reply also does not harm Plaintiff, as no new arguments are advanced in the filing.

[2] The facts as alleged in the complaint are taken as true for purposes of a motion for judgment on the pleadings. *Allah v. Al-Hafeez*, 226 F.3d 247, 249–50 (3d Cir. 2000).

3

Islands Police Department and Governor de Jongh. (*Id.* at ¶ 6). As a DSO, Plaintiff earned a base salary of $70,000 per year. (*Id.* at ¶ 9). Additionally, Lt. Governor Francis and ESU Director Henry Thomas represented to Plaintiff and other ESU agents that they would earn "compensatory time" for hours worked in excess of forty hours per week. (*Id.* at ¶ 22).

Plaintiff was the only female DSO on St. Croix, and was assigned to protect Lt. Governor Francis' wife and their official residence—Sion Farm Mansion. (*Id.* at ¶¶ 16; 18). Unlike her male ESU counterparts, Plaintiff was required to perform menial tasks including running personal errands for the Lt. Governor's wife and non-profit organizations, and chauffeuring the housekeeper for Sion Farm Mansion to and from work regardless of whether Plaintiff was on duty. (*Id.* at ¶¶ 17; 24-25; 27). Again unlike her male counterparts, Plaintiff was not allowed to take compensatory time when Lt. Governor Francis and his family were "off island." (*Id.* at ¶¶ 26-27). From 2007-2008, Plaintiff accrued 2245 hours of compensatory time, which is the equivalent of seven months leave with pay. (*Id.* at ¶ 29).

In April, October, and December of 2008, Plaintiff met with Lt. Governor Francis regarding the compensatory time she was accruing and when she would be permitted to utilize it. (*Id.* at ¶¶ 30-32). Lt. Governor Francis and Director Thomas indicated that "until they could 'figure out' a way to honor their promise of compensatory time, [Plaintiff] was to continue [working] as directed . . . ." (*Id.* at ¶ 33).

In or around February 2009, Lt. Governor Francis indicated that he no longer wanted Plaintiff assigned to his security detail. (*Id.* at ¶ 35). He further explained that Plaintiff was not being fired; instead, she was being reassigned to Governor de Jongh's detail. On March 24, 2009, Plaintiff received a memorandum signed by Director Thomas dismissing her from ESU. (*Id.* at ¶ 37). She was replaced with a male agent. (*Id.* at ¶ 40).

## II.   APPLICABLE LEGAL PRINCIPLES

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). Under the Supreme Court decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), when presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6):

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1950); *Acosta v. Hovensa, LLC*, 53 V.I. 762, 770 (D.V.I. 2010). "A district court may grant the motion to dismiss only if, accepting all factual allegations as true and construing the complaint in the light most favorable to plaintiff, it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Acosta*, 53 V.I. at 771 (citing *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (internal quotations and brackets omitted)).

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1950). While the Court must determine whether the facts as pleaded state a plausible claim for relief, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

5

those facts alleged is improbable and that a recovery is very remote and unlikely." *Fowler,* 578 F.3d at 213 (quoting *Twombly*, 550 U.S. at 556).

"On a motion to dismiss, the Court 'may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, [and] items subject to judicial notice.'" *Acosta*, 53 V.I. at 768 n.1 (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)); *see also Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 (3d Cir. 2006) ("Courts may consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss.").

### III. DISCUSSION

In their Motion, Defendants raise a variety of arguments attacking the sufficiency of Plaintiff's due process, equal protection, gender discrimination, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress claims. The Court will examine each claim in turn before addressing Plaintiff's contention that she is entitled to amend her Complaint should any of her claims fail.

**A.  Due Process**

Seeking redress under 42 U.S.C. § 1983, Plaintiff alleges in Count I of her Complaint that Defendants violated her rights under the Fourteenth Amendment—as applied to the Virgin Islands through 48 U.S.C. § 1561—by depriving her of her "constitutional property right in her employment" without due process. (Dkt. No. 1 at ¶¶ 43-44).[3] Defendants contend that the due

---

[3] In *Boyd-Richards v. De Jongh, Jr.*, No. 11-45, 2012 U.S. Dist. LEXIS 1077 (D.V.I. Jan. 4, 2012), the Court explained the interplay of the Fourteenth Amendment and 48 U.S.C. § 1561:

> As a resident of the Virgin Islands, an unincorporated territory, [Plaintiff's] civil rights are defined by the Bill of Rights set forth in 48 U.S.C. § 1561.

process claim must fail because Plaintiff did not have a property right in her employment under Virgin Islands law. (*See* Dkt. No. 34-1 at 5-7). The Court agrees that Plaintiff has not stated a plausible due process claim.

In an examination of due process claims in the context of public employees of the Virgin Islands, the Third Circuit explained that "to establish a procedural due process claim, a plaintiff must demonstrate that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011) (citations and internal quotations omitted). Further, "[t]he question of whether an employee has a property right in continued employment is a question of state [or territorial] law." *Id.* (citations omitted). Thus, Virgin Islands law governs whether Plaintiff had a property right in her position with ESU. *Id.*; *McIntosh-Luis v. DeJongh*, No. 09-22, 2012 U.S. Dist. LEXIS 45362, *14 (D.V.I. Mar. 30, 2012), *aff'd*, No. 12-2256, 2012 U.S. App. LEXIS 25469 (3d Cir. Dec. 13, 2012).

Virgin Islands law establishes three categories of public employees—exempt service, "regular" career service, and "not regular" career service. *Iles*, 638 F.3d at 173; *McIntosh-Luis*, 2012 U.S. Dist. LEXIS 45362 at *15; *Noorhasan v. De Jongh*, No. 11-cv-2011, 2012 U.S. Dist. LEXIS 45368, *8-9 (D.V.I. Mar. 31, 2012). Of these three categories, only those who meet the definition of "regular" career service employees enjoy due process protection. *Iles*, 638 F.3d at

---

> Nevertheless, § 1561 expresses the congressional intention to make the federal Constitution applicable to the Virgin Islands to the fullest extent possible consistent with its status as a territory. Section 1561 contains provisions that mirror the First Amendment and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution of the United States.

*Id.,* 2012 U.S. Dist. LEXIS 1077 at *6 (internal citations and quotation marks omitted).

174; *McIntosh-Luis*, 2012 U.S. Dist. LEXIS 45362 at *16; *Noorhasan*, 2012 U.S. Dist. LEXIS 45368 at *8-9. As the Third Circuit explained:

> To be a "regular" employee and thus gain a property interest in employment, an employee must have been "appointed to a position in the [career] service in accordance with this chapter after completing his working test period." 3 V.I.C. § 451. "[T]his chapter" refers to Title 3, Chapter 25 of the Virgin Islands Code, which in addition to §§ 451 and 451a, also includes Sections 521 through 535. These sections set forth the standards and requirements for "tests, appointments, promotions, and dismissals" of "regular" public employees. Under Section 521, to have been "appointed to a position in the [career] service in accordance with this chapter" requires that an employee have been appointed "on the basis of merit and fitness, to be ascertained by competitive examinations." 3 V.I.C. § 521.

*Iles*, 638 F.3d at 175-76.[4]

In the instant case, Plaintiff's Complaint does not describe the nature of her appointment so as to plausibly show that she was a "regular" career service employee entitled to due process protections. *Iqbal*, 129 S. Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'") (quoting Fed. R. Civ. P. 8(a)(2)). To the contrary, Plaintiff asserts that the position of DSO was classified as an "unclassified/exempt" position, but then alleges, in conclusory fashion, that the "exempt" or "unclassified" status is an "erroneous classification." (Dkt. No. 1 at ¶¶ 9-10). The Court will disregard such unsupported legal conclusions. *Ethypharm S.A. France v. Abbott Labs.*, No. 11-3602, 2013 U.S. App. LEXIS 1567, *21 n.14 (3d Cir. Jan. 23, 2013) (noting that courts "disregard legal conclusions and

---

[4] As the Third Circuit noted, the definition of "regular" employee was amended in 2010. *Iles*, 638 F.3d at 176. However, the amendment is not retroactive, and this Court is required to apply the definition of "regular" employee that existed at the time Plaintiff's lawsuit arose. *Id.* at 177. Accordingly, this Court will apply the pre-amendment definition discussed above because Plaintiff's due process claim arose on March 24, 2009, the date of her removal from ESU. (Dkt. No. 1 at ¶ 37).

threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (citations and internal quotation marks omitted).

Further, even assuming that Plaintiff was in a career service position and not classified as exempt service, Plaintiff's Complaint contains no factual allegations demonstrating that she meets the definition of a "regular" career service employee. The Complaint is silent on the crucial issue of whether Plaintiff was appointed to the position in accordance with Title 3, Chapter 25 of the Virgin Islands Code, including whether she was "appointed on the basis of merit and fitness . . . [as] ascertained by competitive examinations" after "completing [her] working test period." *Iles* at 176. Rather, the Complaint states simply that Plaintiff was given a "change of class and position" to become Dignitary Security Officer with ESU. (Dkt. No. 1 at ¶ 9). As the Third Circuit noted in *Iles*, "merely because a Virgin Islands public employee is part of the 'career service' does not necessarily mean that he is also a 'regular' employee with a property interest entitled to due process protection." *Id.* at 175.

In sum, Plaintiff has not alleged facts sufficient to state a plausible due process claim. *Id.* at 173 (noting that a plaintiff must first demonstrate that he or she "was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property"); *McIntosh-Luis*, 2012 U.S. Dist. LEXIS 45362 at *20 (finding, in the summary judgment context, that "Plaintiff did not have a protected property interest in her position, and therefore, her Fourteenth Amendment due process claims must fail"). As the Supreme Court has concluded, facts that allow the Court to infer nothing more than "the mere possibility of misconduct" are not sufficient to survive a motion to dismiss. *Iqbal*, 129 S.Ct. 1937.

Defendants raise two additional challenges to Plaintiff's due process claim: (1) that the Government of the Virgin Islands and its officers acting in their official capacity are not persons

within the meaning of § 1983; and (2) that Plaintiff did not allege sufficient facts to establish individual liability of Governor de Jongh. (Dkt. No. 34-1 at 4-5). As to the first argument, it is well established that "[n]either the Territory of the Virgin Islands nor its officers acting in their official capacities are 'persons' under 42 U.S.C. § 1983." *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 240 (3d Cir. 2010) (quoting *Brow v. Farrelly*, 994 F.2d 1027, 1037 (3d Cir. 1993)). Thus, they may not be sued for money damages. *Iles*, 638 F.3d at 177 (citations omitted). However, because they *may* be sued for prospective injunctive relief, *id.* at 177-78, the due process claim against the Government of the Virgin Islands and its officers is not subject to dismissal in its entirety on the ground that they are not persons under the meaning of § 1983.

Defendants' second argument, however, is meritorious. The Court agrees that the Complaint does not contain sufficient facts to plausibly show that Governor de Jongh was personally engaged in, directed, or acquiesced in conduct that violated Plaintiff's due process rights. *See Boyd-Richards*, 2012 U.S. Dist. LEXIS 1077 at *7 (dismissing due process claim where the complaint did not allege that defendant "personally engaged in, directed, or acquiesced in conduct that violated plaintiff's rights"). Thus, as pleaded, the claim against Governor de Jongh in his individual capacity does not state a plausible claim for relief. This pleading deficiency provides an independent basis—apart from Plaintiff's failure to establish a protected property interest in her employment—to dismiss the due process claim against Governor de Jongh in his individual capacity.

**B.     Gender Discrimination**

In Count III of her Complaint, Plaintiff claims that Defendants impermissibly discriminated against her on the basis of gender in violation of Title VII and 3 V.I.C. § 531. To establish a *prima facie* case of gender discrimination, Plaintiff must show that: (1) she is a

member of a protected class; (2) she is qualified for the position in question; (3) defendant took an adverse employment action; and (4) circumstances surrounding the adverse action support an inference of discrimination based on Plaintiff's protected class. *Moore v. Shinseke*, No. 11-4234, 2012 U.S. App. LEXIS 13553, *3-4 (3d Cir. July 3, 2012) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)).

Defendants contend that Plaintiff has failed to state a gender discrimination claim, but they challenge only the fourth element of the *prima facie* case. (*See* Dkt. No. 42 at 11) ("[R]eadily admit[ing]" the first elements but "categorically deny[ing] that nonmembers of the protected class were treated more favorably"). The Court finds, however, that the Complaint contains factual allegations—that this Court must accept as true—from which to support an inference of discrimination sufficient to withstand a motion for judgment on the pleadings. Specifically, Plaintiff contends that unlike her male counterparts at the ESU, she was assigned to menial tasks including "run[ning] personal errands" for Lt. Governor Francis's wife and non-profit organizations (Dkt. No. 1 at ¶¶ 17; 44), and "chauffeur[ing]" the Lt. Governor's housekeeper to work whether Plaintiff was on duty or not. (*Id.* at ¶¶ 25; 27). Additionally, Plaintiff alleges that male ESU agents were permitted to take compensatory time when Lt. Governor Francis and his family were "off island," but she was not. (*Id.* at ¶ 26). Finally, Plaintiff contends that when she was removed from her position, she was replaced by a male agent. (*Id.* at ¶¶ 16; 40).

These allegations are sufficient to survive Defendant's motion seeking the dismissal of Plaintiff's claim that she was subject to discrimination based on her gender. Thus, the Court will deny Defendants' Motion for Judgment on the Pleadings to the extent it seeks dismissal of Plaintiff's gender discrimination claim.

C.  **Equal Protection**

In Count I of the Complaint, Plaintiff claims that "Defendants, acting under color of law, have, by and through their actions intentionally deprived [Plaintiff] of the rights guaranteed by the . . . equal protection clause[] of the Constitution." (Dkt. No. 1 at ¶ 45).

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class." *Lande v. City of Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012) (citing *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009)). The Court finds that Plaintiff has stated a plausible claim for relief under the Equal Protection Clause of the Fourteenth Amendment. The same facts that support Plaintiff's gender discrimination claim also support her equal protection claim, given that the individuals alleged to have discriminated in this instance are state actors. Thus, the Court will deny Defendants' Motion for Judgment on the Pleadings as it relates to Plaintiff's equal protection claim to the extent that the claim pertains to allegations of gender discrimination.

D.  **Contract**

Plaintiff's Complaint also contains three contract claims: (1) breach of contract on the grounds that Defendants allegedly failed to comply with the "procedures and policies" incorporated into Plaintiff's employment contract in demoting and discharging her; (2) breach of contract with regard to Lt. Governor Francis' alleged promise that Plaintiff would earn compensatory time for overtime hours worked as an ESU agent; and (3) breach of the implied covenant of good faith and fair dealing with regard to compensatory time. (Dkt. No. 1 at ¶¶ 48; 59-62). Defendants contend that Plaintiff has failed to establish the essential elements of these claims. (Dkt. 34-1 at 11).

"To state a claim for breach of contract under Virgin Islands law, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) the breach of a duty imposed by the contract; and (3) damages resulted from the breach." *Speaks v. Gov't of the V.I.*, No. 2006-168, 2009 U.S. Dist. LEXIS 3565, *12 (D.V.I. Jan. 14, 2009) (citations omitted); *see also Rainey v. Hermon*, 55 V.I. 875, 881 (V.I. 2011) ("Under Virgin Islands law, to prove a breach of contract, a plaintiff must establish (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages.") (citation and internal quotation marks omitted).

Turning first to Plaintiff's "procedures and policies" breach of contract claim, Plaintiff avers as follows:

1. "Defendants represented the ESU Standard Operating Procedural Manual ("SOPM") as [Plaintiff's] employment contract."

2. "The SOPM describes the administration's guidelines and procedures for demotion and/or discharge of all ESU employees, in addition to the ESU's employee's right to appeal a demotion or discharge."

3. "Defendants did not adhere to the SOPM when they demoted and/or discharged [Plaintiff] without cause or due process thereby breaching her employment contract."

4. "The actions of Defendants are clearly a breach of its procedures and policies set forth in the Virgin Islands Government Department of Personnel Rules and Regulations, 3 VIC 530 and the ESU Standard Operating Procedures Manual which form the basis of the contract."

(Dkt. No. 1 at ¶¶ 11-13; 48). Even if this Court were to assume that these allegations suffice to support a claim for the existence of a contract, Plaintiff has failed to state a claim because she has not identified a specific duty imposed by the agreement and breached by Defendants. *Rainey*, 55 V.I. at 881 (requiring plaintiff to establish a duty created by the contract and a breach of *that* duty); *see also Speaks*, 2009 U.S. Dist. LEXIS 3565 at *13-14 ("[E]ven assuming that these statements allege a contract between [plaintiff] and [defendant], [plaintiff] did not include any of

the contract's 'essential terms.'"). In particular, Plaintiff does not identify what policies or procedures actually govern the removal of employees. Plaintiff further failed to allege any facts plausibly showing that Defendant breached these unidentified removal policies and procedures.

In short, Plaintiff's allegations amount to nothing more than the assertion that a contract existed and Defendants breached unidentified terms of this contract. As the Third Circuit explained, district courts may disregard such bare legal conclusions. *Fowler*, 578 F.3d at 210-11. Accordingly, Plaintiff's "policies and procedures" breach of contract claim cannot survive Defendant's Motion for Judgment on the Pleadings.

In stark contrast to her "policies and procedures" claim, Plaintiff has sufficiently alleged a breach of contract claim with respect to the promise of compensatory time for overtime hours worked. In particular, the Complaint alleges that:

1. "Lieutenant Governor Francis and Director Thomas specifically represented to [Plaintiff] and other ESU agents that they would earn compensatory time for the hours worked in excess of 40 hrs/week."

2. "[A]t no time did Defendants have the intention or means to honor its [sic] promise of compensatory time."

3. "[Plaintiff] relied to her detriment on the Defendants' representations of remuneration for working virtually around the clock."

4. "From 2007-2008 [Plaintiff] accrued 2245 hours of compensatory time, the equivalent of 7 months leave with pay."

5. Plaintiff was removed from her position with ESU so that Defendants could "avoid [their] obligation of remuneration."

(Dkt. No. 1 at ¶¶ 22-23; 29; 31; 39).

These allegations are sufficient to support a claim for: (1) the existence of a contract and the specific duty created thereby (the alleged promise to award Plaintiff compensatory time for hours worked in excess of forty hours per week); (2) the alleged breach of that contract

(Defendants' failure to award Plaintiff compensatory time); and (3) damages resulting from this breach (lost compensation and removal from her position). Plaintiff has, therefore, stated a plausible claim for breach of contract with respect to compensatory time. *See Rainey*, 55 V.I. at 881; *Speaks*, 2009 U.S. Dist. LEXIS 3565 at *12. Accordingly, the Court will deny Defendant's Motion for Judgment on the Pleadings as it relates to Plaintiff's claim for breach of contract for compensatory time earned.

Plaintiff also contends that Defendants breached the implied covenant of good faith and fair dealing with respect to the promise of awarding compensatory time. (Dkt. No. 1 at ¶¶ 59-62). As this Court has explained:

> The implied covenant of good faith and fair dealing states that every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.
>
> To succeed on a cause of action for breach of the covenant of good faith and fair dealing, a plaintiff must prove acts by the defendant that amount to fraud, deceit, or misrepresentation. To successfully allege an act of fraud or misrepresentation, a complainant must demonstrate: (1) a knowing misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of that reliance.

*Galloway v. Islands Mech. Contractor, Inc.*, No. 2008-071, 2012 U.S. Dist. LEXIS 129014, *57 (D.V.I. Sept. 11, 2012) (citations and internal quotation marks omitted); *see also Desir v. Hovensa*, LLC, No. 2007/97, 2012 U.S. Dist. LEXIS 30476, *25 (D.V.I. Mar. 7, 2012); RESTATMENT (SECOND) OF CONTRACTS § 205 (1981).

Here, Plaintiff has alleged sufficient facts to survive a motion for judgment on the pleadings. The Complaint alleges that Defendants promised Plaintiff that she would earn compensatory time for hours worked in excess of forty hours per week; Defendants never intended to fulfill this promise; and Plaintiff detrimentally relied by accruing 2245 hours of

compensatory time without remuneration. (*See* Dkt. No. 1 at ¶¶ 22-23; 29; 31; 39). One could reasonably infer from the allegations in the Complaint—which must be accepted as true—that Defendants intended for Plaintiff to rely on the promise of compensatory time, but had no plan of honoring the promise. Such an inference could be drawn from Plaintiff's allegations that, after multiple meetings on the subject (and many hundreds of hours of compensatory time accrued), Defendants instructed Plaintiff to continue working until Defendants could "figure out" a way to honor their promise, and then subsequently removed Plaintiff from the DSO position without honoring the promise. (*Id.* at ¶¶ 30-33; 35; 37; 39). Therefore, the Court will deny Defendants' Motion for Judgment on the Pleadings to the extent it seeks dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

E.  **Intentional Infliction of Emotional Distress**

In Count V of the Complaint, Plaintiff seeks to recover for intentional infliction of emotional distress on the grounds that "Defendants' actions have affected her to such as [sic] extent that it appears [their] intent was to humiliate, embarrass and inflict emotional and financial harm upon Plaintiff[.]" (Dkt. No. 1 at ¶ 64). Plaintiff further asserts that "such actions were extreme and outrageous and executed with reckless disregard to Plaintiff's rights[,]" and that she "has suffered emotional distress and harm all to her detriment[.]" (*Id.* at ¶¶64-65). One can infer from the allegations in the Complaint that the "actions" to which Plaintiff refers are the same actions which form the basis of Plaintiff's other claims—that Defendants allegedly required Plaintiff to perform menial tasks, treated her less favorably than male ESU employees, and ultimately removed her from ESU illegally and without honoring the compensatory time accrued.

Defendants contend that these actions do not rise to the level necessary to support a claim for intentional infliction of emotional distress. (Dkt. No. 34-1 at 12). The Court agrees.

This Court previously addressed claims of intentional infliction of emotional distress in the employment context in *Glasgow v. Veolia Water North America, Operating Services, LLC*, No. 2009-019, 2010 U.S. Dist. LEXIS 99570 (D.V.I. Sept. 21, 2010). In *Glasgow*, the Court explained the "high bar to meet" to state a claim for intentional infliction of emotional distress:

> [Intentional infliction of emotional distress] occurs when one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. In order to be liable for [intentional infliction of emotional distress], a defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Id.* at *28-29. The Court continued, noting that "[i]t is *extremely rare* to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* at *29 (emphasis added) (quoting *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997)). "Whether the defendant's conduct is so extreme or outrageous as to permit recovery is initially a matter to be decided by the court." *Speaks*, 2009 U.S. Dist. LEXIS 3565 at *21 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. h).

The Court finds that the allegations in Plaintiff's Complaint do not rise to the level of conduct so outrageous and extreme "as to go beyond all bounds of decency" and which should be "regarded as atrocious and utterly intolerable in civilized society." *See id.* at *29-30 (finding, in the motion to dismiss context, that plaintiff's allegations of pervasive discrimination and employer's preferential treatment of Caucasian workers was not sufficiently outrageous to

support intentional infliction of emotional distress claim). Accordingly, the Court will grant Defendant's Motion for Judgment on the Pleadings on Count V of Plaintiff's Complaint.

## F.     Leave to Amend

Having concluded that Plaintiff has not sufficiently pleaded a number of claims, the Court must address Plaintiff's request for leave to amend her Complaint. In her Opposition to Defendants' Motion, Plaintiff asserts that "in the event the complaint fails to state a claim, unless amendment would be futile, the District Court *must* give a plaintiff the opportunity to amend her complaint." (Doc. No. 36 at 4-5) (emphasis added). Plaintiff cites two cases for this proposition: *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000), and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). Neither case restricts the denial of leave to amend solely to futility of amendment.[5] In any event, none of the various grounds for denying leave to amend (undue delay, bad faith, dilatory motive, prejudice, futility) is present in this case. Moreover, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Shane*, 213 F.3d at 115. And here, justice so requires.

As discussed above at length, Plaintiff failed to sufficiently *plead* the due process claim; the "policies and procedures" contract claim; and the intentional infliction of emotional distress claim. However, Defendants should not gain a tactical advantage by waiting until the close of discovery to file a motion for judgment on the pleadings, possibly capitalizing on what may turn

---

[5] In *Shane*, the Third Circuit noted that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Id.*, 213 F.3d at 115 (citations omitted). Similarly, the Third Circuit stated in *Phillips* that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be *inequitable or futile*." *Id.*, 515 F.3d at 236 (emphasis added) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002), in turn citing *Shane*, 213 F.3d at 116).

out to be technical pleading deficiencies that could be cured by amendment. Thus, the Court will not—by denying an amendment to the pleadings—permit the defeat of potentially meritorious claims by means of post-discovery identification of potentially curable pleading defects. At the same time, discovery has been conducted on the claims asserted by Plaintiff in her initial Complaint, and opening discovery to new claims at this juncture would further delay the proceedings. Accordingly, the Court will grant Plaintiff leave to amend her Complaint—if she so chooses—to address the pleading defects identified in this Memorandum Opinion, and Defendants will be permitted to respond in accordance with the applicable Rules of Civil Procedure. However, Plaintiff will not be permitted to allege any new claims in an Amended Complaint.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings (Dkt. No. 34) is granted with respect to Plaintiff's due process, breach of contract (for violating unidentified "policies and procedures"), and intentional infliction of emotional distress claims. The Motion is denied with respect to Plaintiff's gender discrimination and equal protection claims, contract claims regarding compensatory time, and alleged breach of the implied covenant of good faith and fair dealing. An appropriate Order accompanies this Memorandum Opinion.

Date: February 26, 2013 _____/s/_____
WILMA A. LEWIS
District Judge