# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| BARBARA MAGRAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| GOVERNOR JOHN P. DE JONGH, JR., ) | Civil Action No. 2010-091 |
| LIEUTENANT GOVERNOR GREGORY ) | |
| FRANCIS, in their official and individual ) | |
| capacities, EXECUTIVE SECURITY UNIT ) | |
| and THE GOVERNMENT OF THE UNITED ) | |
| STATES VIRGIN ISLANDS, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Attorneys:**
**Rachel E. Morrison, Esq.,**
St. Croix, U.S.V.I.
　　*For the Plaintiff*

**Melvin H. Evans, Jr., Esq.,**
**Raymond T. James, Esq.,**
St. Croix, U.S.V.I.
　　*For the Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Plaintiff Barbara Magras's Motion *in Limine* (Dkt. No. 62), Defendants' Opposition to the Motion (Dkt. No. 64), and Plaintiff's Reply (Dkt. No. 65). Plaintiff's Motion seeks to exclude at trial, under Federal Rules of Evidence 401 and 403, any evidence suggesting that Plaintiff stole cleaning supplies or engaged in any other transgression or infraction prior to her reassignment. (Dkt. No. 62 at 3). For the reasons discussed below, the Court will deny Plaintiff's Motion.

## I. BACKGROUND

### A. Procedural History

This case stems from the March 29, 2009 reassignment of Plaintiff Barbara Magras from her position as a Dignitary Security Officer with the Executive Security Unit ("ESU") of the Virgin Islands Police Department, to the Department of Planning & Natural Resources Law Enforcement Division.[1]

On March 15, 2013, Plaintiff filed a First Amended Complaint (Dkt. No. 58) seeking declaratory relief, injunctive relief, compensatory damages, and punitive damages from Governor John P. de Jongh, Jr. and Lieutenant Governor Gregory Francis (in both their individual and official capacities), the ESU, and the Government of the United States Virgin Islands (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et. seq.*), and Virgin Islands law.[2] Specifically, Plaintiff contends that Defendants: (1) violated her rights under the Fourteenth Amendment by removing her from the ESU without due process (Count I); (2) violated her rights under the Equal Protection Clause (Count I); (3) breached the terms of her employment contract and the implied covenant of good faith and fair dealing (Counts II & IV); (4) impermissibly discriminated against her on the basis of gender (Count III); and (5) intentionally inflicted emotional distress upon her (Count V). (Dkt. No. 58 at ¶¶ 56–83). Defendants filed an Answer (Dkt. No. 60) on April 15, 2013.

---

[1] Plaintiff contends that her reassignment was the equivalent of a demotion or discharge. (Dkt. No. 58 at ¶ 24). By using the neutral word "reassignment" the Court passes no judgment on the merits of Plaintiff's contention.

[2] The original Complaint in this matter was filed on September 7, 2010. (Dkt. No. 1).

By the instant Motion *in Limine*, Plaintiff seeks to exclude, from admission at the trial of this matter, evidence suggesting that she stole cleaning supplies or engaged in any other infraction prior to her reassignment.

**B.     Factual Background**

Plaintiff was employed as a Dignitary Security Officer ("DSO") with the ESU. (Dkt. No. 58 at ¶ 3). According to the allegations in Plaintiff's First Amended Complaint, Lt. Governor Francis ("Francis") and ESU Director Henry Thomas represented to Plaintiff and other ESU agents that they would earn "compensatory time" for hours worked in excess of forty hours per week. (*Id.* at ¶¶ 36–37). From 2007–2008, Plaintiff accrued 2245 hours of compensatory time, which is the equivalent of seven months leave with pay. (*Id.* at ¶ 43). Plaintiff met with Francis in April, October, and December of 2008 regarding the compensatory time she was accruing and when she would be permitted to utilize it. (*Id.* at ¶¶ 44, 46). Francis and Director Thomas indicated that "until they could 'figure out' a way to honor their promise of compensatory time, [Plaintiff] was to continue [working] as directed . . . ." (*Id.* at ¶ 47).

Plaintiff further alleges that, in or around February 2009, Francis indicated that he no longer wanted Plaintiff assigned to his security detail. (*Id.* at ¶ 49). He further explained that Plaintiff was not being fired; instead, she was being reassigned to Governor de Jongh's detail. (*Id.*) On March 24, 2009, Plaintiff received a memorandum signed by Director Thomas dismissing her from the ESU. (*Id.* at ¶ 51). The memorandum thanked Plaintiff for her service in the ESU and stated, "[w]hile you were here you upheld the standards of the Executive Security Unit with the utmost professionalism. Your dedication and hard work has been recognized and appreciated." (*Id*; Dkt. No. 34-3).

3

On May 18, 2012, the deadline for factual discovery, Francis was deposed. (Dkt. No. 64-1). Francis stated in his deposition that Plaintiff stole cleaning supplies. (*Id.* at 33–43). According to Francis, his home attendant notified him that certain cleaning items she had ordered never arrived. (*Id.* at 34–37). The home attendant knew the supplies were missing because she kept inventory lists. (*Id.* at 34–36). Mr. Francis claims that Plaintiff acknowledged to his wife that Plaintiff had the supplies, and she returned them after Mrs. Francis spoke to her about them. (*Id.* at 36–37). Francis does not know when the incident transpired, but believes it was closer to the date of Plaintiff's reassignment than it was to the beginning of her service with the ESU. (*Id.* at 38–39). Francis himself did not speak to Plaintiff about the incident, nor did he document the events. (*Id.* at 39–40).

## II. DISCUSSION

Plaintiff's Motion requests the exclusion at trial, under Rule 403, of "any evidence, testimony and/or statements made by defense counsel, parties or witnesses that reference, infer or suggest that [Plaintiff] allegedly stole cleaning supplies or was ever written up or disciplined for any infraction or transgression at any time while working as an ESU Agent prior to the day Defendants discharged, demoted or 'reassigned' [Plaintiff] without cause." (Dkt. No. 62 at 3). Plaintiff offers four core arguments for the exclusion of this evidence: (1) the evidence is irrelevant under Rule 401; (2) prior to Francis's deposition, "Defendants repeatedly claimed that [Plaintiff] was discharged without cause." (Dkt. No. 62 at 2); (3) the evidence fails the Rule 403 balancing test; and (4) Francis's allegation was the equivalent of an untimely material disclosure.

In opposition to Plaintiff's Motion, Defendants argue that the evidence is relevant because it "clearly goes to Defendant Francis's state of mind as to why he and his wife removed [Plaintiff] from their security detail." (Dkt. No. 64 at 2). Defendants concede that "[t]he

4

statements of Defendant Francis may be prejudicial to the Plaintiff," but argue that the "prejudicial nature [of the evidence] is small" and that "it has a very high probative value" because "the statement goes directly to an issue in the case." (*Id.* at 4).

### A.     Relevance of the Evidence

Plaintiff argues that Francis's "inflammatory testimony has no relevance to Defendants' claims herein—except to improperly mislead the jury and unduly prejudice Plaintiff's case." (Dkt. No. 62 at 2). Further, Plaintiff contends that Francis's testimony is "entirely irrelevant for any purpose inasmuch as [it] ha[s] no bearing on the defenses raised in this case or the rights of the parties to this suit and thus would not meet the threshold requirement for admissibility pursuant to Fed. R. Evid. 401." (*Id.* at 4).

"Relevant evidence" is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" where "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Rule 401 does not raise a high standard." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 109–10 (3d Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 782–83 (3d Cir. 1994)). "[E]vidence is irrelevant only when it has *no* tendency to prove [a consequential fact]." *Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir. 1992) (internal quotation marks omitted). "Thus [Rule 401], while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant." *Id.*

Integral to Plaintiff's allegations is her contention that she had a record of exemplary service as an agent in the ESU. For example, in connection with her claim of gender discrimination in Court III of the First Amended Complaint, she alleges that "Plaintiff was terminated though she was an exemplary Agent and qualified for the ESU position." (Dkt. No.

5

58 at ¶ 69). Plaintiff makes similar assertions about her record of exemplary service throughout the First Amended Complaint. (*See, e.g.*, *id.* at ¶¶ 25, 26, 51).

The challenged testimony is relevant to the service that Plaintiff rendered as an Agent with the ESU, which Plaintiff herself has put at issue through the allegations in her Complaint and the causes of action which she asserts as the basis for the relief that she seeks.[3] Accordingly, the Court finds that Francis's testimony regarding the alleged stolen supplies has a tendency to make a fact of consequence to the case "more or less probable than it would be without the evidence," and is therefore relevant under Rule 401. Fed. R. Evid. 401.

**B.     Defendants' "Repeated Claims" that Plaintiff was Discharged Without Cause**

Plaintiff phrases this argument in three different ways. Early in her argument, she asserts that, prior to Francis's deposition, "Defendants repeatedly *claimed* that [Plaintiff] was discharged without cause . . . ." (Dkt. No. 62 at 2) (emphasis added). Next, she contends that "Defendants *never alleged* that Plaintiff was discharged for cause or for allegedly stealing . . . ." (*Id.* at 3) (emphasis added). Finally, Plaintiff alleges that "Defendants have *never defended* this case or produced any evidence that Agent Magras had anything but an outstanding record of civil service while serving in the ESU. (*Id.* at 3–4) (emphasis added). Regardless of the formulation, however, the issue is whether Defendants are precluded from introducing evidence which challenges Plaintiff's claimed record of exemplary service.

Plaintiff identifies three instances in the record where she maintains that Defendants claimed that she was discharged without cause, thereby now foreclosing any challenge to

---

[3] *See, e.g.*, Count III of the First Amended Complaint, which alleges gender discrimination (Dkt. No. 58 at ¶¶ 65–72), and for which legitimate non-discriminatory reasons for the adverse action is of critical importance. *See Moore v. Shinseke*, 2012 US. App. LEXIS 13553, at *3–4 (3d Cir. July 3, 2012).

Plaintiff's record of service. First, Plaintiff points to Defendants' Answer admitting the allegation in Paragraph 37 of Plaintiff's Complaint. (Dkt. No. 65 at 1). Paragraph 37 describes the reassignment memorandum given to Plaintiff:

> On March 24, 2009, Agent Magras was hand delivered a memorandum dismissing her from the ESU. The memorandum was signed by ESU Director Henry Thomas but did not state any basis for Defendants' decision to dismiss Plaintiff from the ESU. Remarkably and to the contrary, Henry Thomas commended Agent Magras by writing "[w]hile you were here you upheld the standards of the Executive Security Unit with the utmost professionalism. Your dedication and hard work has been recognized and appreciated."

(Dkt. No. 1 at 6, ¶ 37).[4] However, Plaintiff fails to explain, and the Court cannot discern, how Defendants' admission that Paragraph 37 contains a factually accurate description of certain documentary evidence serves to foreclose Defendants from introducing other evidence that may suggest otherwise. *Cf. ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 862 n.13 (3d Cir. 1994) ("Since answers given in discovery must be truthful, a defendant must admit to the existence of a contract regardless of whether he or she intends to be bound."). While Defendants' admission may provide fertile ground for cross-examination, Plaintiff has cited no authority for the proposition—and the Court is unaware of any—that such an admission precludes the introduction of potentially contrary evidence by Defendants.

---

[4] The Court notes that, although Plaintiff cites the Answer to the original Complaint, Defendants' Answer to this allegation in the First Amended Complaint, denies the allegation as stated and continues:

> Agent Magras was hand delivered a memorandum reassigning her to the Department of Planning & Natural Resources (Law Enforcement Division). Defendants admit that Director Henry Thomas wrote that "[w]hile you were here you upheld the standards of the Executive Security Unit with the utmost professionalism. Your dedication and hard work has been recognized and appreciated."

(Dkt. No. 60 at ¶ 51).

7

The second instance that Plaintiff identifies in the record as demonstrating Defendants' repeated claims that Plaintiff was fired without cause is Defendants' affirmative defense in their Answer that "[e]xempt employees serve 'at the pleasure of the Governor' and their services may be terminated without cause at any time." (Dkt. No. 13 at 6, ¶ 6). Plaintiff argues that Defendants used this defense to claim that "Plaintiff's discharge *without cause* was lawful." (Dkt. No. 65 at 2).

While the affirmative defense at issue supports the argument that Plaintiff suggests, it could also support the proposition that Defendants *could* legally discharge Plaintiff without cause, notwithstanding the existence of concerns with Plaintiff's service that might in fact amount to cause for discharge. Moreover, even if Defendants claimed to have reassigned Plaintiff without cause, they would not be foreclosed from arguing in the alternative that they had cause for the reassignment. Federal Rule of Civil Procedure 8(d)(2), instructs that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any of them is sufficient." Fed. R. Civ. P. 8(d)(2). Similarly, Federal Rule of Civil Procedure 8(d)(3) states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Thus, this second example cited by Plaintiff also fails to establish that Defendant is precluded from identifying concerns with Plaintiff's record of service.

Third, Plaintiff points to Defendants' Motion for Judgment on the Pleadings where, according to Plaintiff, "Defendants simply and emphatically claim that Agent Magras has no legal rights or recourse whatsoever because she was discharged without cause." (Dkt. No. 65 at

8

12). Even assuming the truth of that statement, it does not—as discussed above—foreclose a challenge to Plaintiff's record of service.

The Court's conclusions are reinforced by the fact that, contrary to Plaintiff's assertions, the record contains several indications by Defendant that Plaintiff's service record is potentially at issue. In their Answers to the Complaint and First Amended Complaint, Defendants deny Plaintiff's claim that "Agent Margras' [sic] had an exemplary work record with the ESU and was never subject to discipline. (Dkt. No. 13 at 2, ¶ 14; Dkt. No. 60 at 3, ¶ 25). Defendants also deny Plaintiff's claim that "Agent Magras' discharge from the ESU and a demotion in government service was made without cause, a hearing, or due process." (Dkt. No. 13 at 3, ¶ 38; Dkt. No. 60 at 4, ¶ 52). Further, in their Answers to both the Complaint and First Amended Complaint, Defendants assert the affirmative defense that "Plaintiff's claims are barred because the damages alleged were proximately caused by Plaintiff's own conduct." (Dkt. No. 13 at 6, ¶ 9; Dkt. No. 60 at 8, ¶ 9). Thus, the posture taken by Defendants in the case does not restrict them to a "without cause" discharge defense, or prevent them from raising infractions by Plaintiff.

**C.     Rule 403 Balancing**

Turning to Plaintiff's claim that the challenged testimony should be excluded under Rule 403 of the Federal Rules of Evidence, the Rule provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In this context, "unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Knight*, 700 F.3d 59, 63 (3d Cir. 2012) (quoting Fed. R. Evid. 403 advisory committee's note). Rule 403 is a rule of inclusion, which

9

favors the admissibility of evidence unless its probative value is *substantially outweighed* by the danger of one or more of the factors enumerated in the rule. *See id.; United States v. Clarke*, 24 F.3d 257, 265 (D.C. Cir. 1994) (observing that the D.C. Circuit "has previously noted that the language of Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases'") (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)).

Plaintiff raises three grounds for exclusion in the instant motion: unfair prejudice, confusing the issues, and misleading the jury. If the probative value of Francis's testimony is substantially outweighed by any of these, the Court may exclude the evidence. *Id.; Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002).

Plaintiff contends that Francis's claim that Plaintiff stole cleaning supplies is an "extraneous matter" and that bringing it before the jury will unfairly prejudice Plaintiff, confuse the issues, and mislead the jury. Plaintiff argues that "[t]he mere suggestion or comments to jurors or perspective jurors, testimony or offers of evidence concerning this issue will prejudice the jury; and sustaining the objections to such questions, comments or offers would not cure such prejudice, but would reinforce the impact of such prejudicial matters on the jurors. . . . Curative instructions would be inadequate to overcome the prejudicial effect resulting from the exposure of such an inflammatory allegation to the jury." (Dkt. No. 65 at 12–13).

The Court disagrees with Plaintiff's contention that Francis's testimony at issue is an "extraneous matter." As discussed above, this evidence is relevant to the issues raised by Plaintiff in this case. Francis's allegation that Plaintiff stole cleaning supplies is highly probative of the issue of her job performance. *Moore*, 2012 US. App. LEXIS 13553, at *3–4.

The Third Circuit instructs that "evidence that is highly probative is exceptionally difficult to exclude." *Coleman*, 306 F.3d at 1344 (citation omitted). While Plaintiff argues that

10

the introduction of Francis's testimony that Plaintiff stole cleaning supplies will mislead the jury or confuse the issues, the Court disagrees. Indeed, the testimony bears on a pertinent issue of the case—the circumstances surrounding Plaintiff's reassignment. Accordingly, the Court does not find that the probative value of Francis's testimony is outweighed—let alone substantially outweighed—by the danger of confusing the issues or misleading the jury.

Turning to the issue of unfair prejudice, there is no doubt that this evidence is prejudicial, or Plaintiff would not object to its admission. *Carter v. Hewitt*, 617 F.2d 961, 972 n.14 (3d Cir. 1980) ("Virtually all evidence is prejudicial or it isn't material.") (citation and internal quotation marks omitted). The question under Rule 403, however, is whether the evidence is *unfairly* prejudicial, and so much so as to substantially outweigh its probative value. *Id.* ("[Rule 403] does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial.").

Francis's testimony is not unfairly prejudicial. A plaintiff claiming to have been disciplined or terminated without cause should not be permitted to shield herself from evidence pertaining to her job performance by arguing that such evidence is unfairly prejudicial. This is because causes of action fashioned around an allegedly wrongful discharge contain elements that go to the employer's state of mind, which is influenced by the employee's performance. *See Garner v. Mo. Dept. of Health*, 439 F3d 958, 960 (8th Cir. 2006) ("Evidence demonstrating the employer's state of mind is 'of crucial importance in wrongful discharge cases.'" (quoting *Hardie v. Cotter & Co.*, 849 F.2d 1097, 1101 (8th Cir. 1988)); *Scull v. Wackenhut Corp.*, 2013 WL 3168655, at *3 (D.N.J. June 20, 2013) ("In the employment discrimination context . . . the state of mind of the person making the employment decision . . . [is] a critical factor."). For these reasons, the Court finds that the high probative value of Francis's testimony is not substantially

11

outweighed by any unfair prejudice. Accordingly, the Court will not exclude the challenged testimony under Rule 403.

### D. Timeliness of Disclosure

Plaintiff further argues that because Francis's allegation was not specifically raised in Defendants' "Rule 26 Disclosures" (Dkt. No. 21), but rather was raised for the first time in Francis's deposition on May 18, 2012 (the last day of discovery), it was "the equivalent of an untimely material disclosure" that should be excluded. (Dkt. No. 65 at 3). Under this argument, Plaintiff is effectively seeking the exclusion of Francis's testimony as a discovery sanction.

The Court disagrees with Plaintiff's contention that Defendants' disclosure was untimely. Although Francis's allegation came to light on the last day of discovery (May 18, 2012), Francis was identified as a witness with knowledge on September 30, 2011, in Defendant's Rule 26 Disclosures. Plaintiff was free to depose Francis at an earlier date, but apparently chose not to do so. Further, as noted above, the assertions in Defendants' Answer should have placed Plaintiff on notice that her record of service, which she claimed was exemplary, was at issue. (Dkt. No. 13 at 6, ¶ 9; Dkt. No. 60 at 8, ¶ 9). Plaintiff could have propounded discovery directed at these aspects of Defendants' Answer—but again, apparently chose not to do so. The Court will not now preclude Defendants from offering this evidence at trial because Plaintiff failed to use the discovery tools and time available to her to discover and explore these allegations at an earlier date.

Rule 26 instructs parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). In their Rule 26 Disclosures, Defendants listed Francis as a potential

witness with the explanation that he was "generally the person to whom Plaintiff was assigned during her stint with the ESU." (Dkt. No. 21 at 1). Immediately below Francis, Defendants listed his wife, with the explanation that she was "specifically the person to whom Plaintiff was assigned during her stint with the ESU." (*Id.*)

The Court notes that if Plaintiff did not think these were sufficient explanations of the "subjects" about which these potential witnesses were likely to testify, she could have objected back in 2011 when the Rule 26 Disclosures were made. She apparently did not do so. In any event, in a case such as this, where Plaintiff claims wrongful discharge, Defendants put the plaintiff's work record at issue in their Answer, and Defendants list two of Plaintiff's superiors as potential witnesses with discoverable information, the expected course of action would have been for Plaintiff to use the discovery tools at her disposal in a timely fashion to "discover" the substance of the witnesses' testimony. While Plaintiff was free to decide her own approach to discovery, the Court will not allow Plaintiff to squander the opportunities available to engage in meaningful discovery and then to complain—two years after the fact—that Defendants' initial disclosures were insufficient to place her on notice of information that she could, and should, have obtained through her own timely discovery efforts.

Accordingly, the Court will not exclude Francis's testimony as an untimely disclosure.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion *in Limine*, seeking to exclude any evidence suggesting that Plaintiff stole cleaning supplies, is denied.[5] An appropriate Order accompanies this Memorandum Opinion.

Date: September 18, 2013                           _____/s/_____
                                                                                   WILMA A. LEWIS
                                                                                   Chief Judge

---

[5] The Court notes that Plaintiff's Motion specifically requests the exclusion of any "evidence, testimony and/or statements . . . that reference, infer or suggest that Barbara Magras allegedly stole cleaning supplies or was ever written up or disciplined for *any infraction or transgression* at any time while working as an ESU Agent . . . ." (Dkt. No. 62 at 3) (emphasis added). The request regarding "any infraction or transgression" is too broad for the Court to evaluate *in limine*, without an identification of the infractions or transgressions. Accordingly, the Court passes judgment only on Plaintiff's request concerning the allegation of stolen cleaning supplies.